UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| JARROD MARTIN,<br><br>    *Plaintiff*,<br><br>v.<br><br>WAYNE ANDERSON and BARRY P. STAUBUS,[1]<br><br>    *Defendants*. | No.: 2:14-cv-200-TWP-DHI |

## **MEMORANDUM and ORDER**

Jarrod Martin, a prisoner confined in the Sullivan County Detention (SCDC), brings this *pro se* civil rights complaint for injunctive and monetary relief under 42 U.S.C. § 1983, against Wayne Anderson, the Sullivan County Sheriff, and Barry P. Staubus, the District Attorney General (Doc. 2). Plaintiff's application to proceed without prepayment of fees, (Doc. 1), is **GRANTED**. Nonetheless, because the Plaintiff is a prisoner, he is **ASSESSED** the filing fee of $350.00. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).[2]

The custodian of the Plaintiff's inmate trust account at the institution where he now resides shall submit twenty percent (20%) of the Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly

---

[1] The Court has corrected the spelling of the lead Defendant's first name, which the Plaintiff misspelled as "Wain." *See* Sullivan County, Tennessee Sheriff's Office website, online at http://www.scsotn.com/ (last visited on January 22, 2015).

[2] An inmate who has no funds in his trust account "is still obligated to pay the full filing fee when money does become available." *McGore*, 114 F.3d at 601. The accounting document submitted by plaintiff shows that he has had no money in the account since the date of his booking into the jail.

income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office. *McGore,* 114 F.3d at 607. Payments should be sent to: <u>Clerk, USDC; 220 W. Depot St., Suite 200; Greeneville, TN 37743.</u>

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where the Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in the Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## I.     Screening the Complaint

The Court must now review the complaint to determine whether it states a claim entitling the Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If so, this suit must be dismissed. In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court examines the complaint in light of those requirements.

## II.     Plaintiff's Allegations

In his pleading, the Plaintiff makes the allegations which follow. On July 7, 2013, jail officials collected biological specimens for DNA analysis, without a warrant and using excessive

2

force, after he refused to consent to the sample. Two days later, i.e., on July 9, 2013, Sullivan County officials picked him up in Duffield, Virginia, and, without affording him a habeas corpus hearing and without him waiving extradition, transported him to Sullivan County, Tennessee, where he (by implication) was confined in the SCDC.

On July 25, 2013, another inmate attacked the Plaintiff causing him facial fractures (as shown on a CT scan) and injuries to the area around his left eye, which required stitches. The Plaintiff was scheduled to see a specialist in three days, but jail officials refused to take him. Though the Plaintiff's psychiatrists in Virginia prescribed medication, "the doctor here [] any and all medical treatment" (Doc. 2 at 4). (A verb appears to missing from that phrase.)

In September, 2013, the Plaintiff's attorney sent Plaintiff legal materials, but jail officials opened the correspondence outside of the Plaintiff's presence, seized a § 1983 form complaint, and put other materials in the Plaintiff's property. They then made both Plaintiff and his counsel sign forms releasing the items to the Plaintiff's attorney. Furthermore, the Plaintiff has also been denied phone calls from his attorney.

In December of 2013, the state trial court presiding over the Plaintiff's state criminal proceedings refused to allow the Plaintiff to file *pro se* motions, after the Plaintiff's attorney withdrew from representing the Plaintiff. On February 27, 2014, the Plaintiff was denied a bond reduction and, on April 11, 2014, he was denied a fast and speedy trial.

On March 3, 2014, another inmate spat on the Plaintiff, and he filed charges against the assailant. However, the charges were dismissed because jail officials did not follow proper protocol in filing the charges. The Plaintiff asked if he could refile the charges properly, but jail officials refused that request.

The SCDC denies the Plaintiff hygiene items, including a tooth brush, tooth paste, shaving supplies and soap. The SCDC also harasses the Plaintiff daily. The Plaintiff was issued a disciplinary report for hanging up a towel after taking a shower, though inmates are allowed to hang up towels to dry. However, the Plaintiff received the loss of a month of good time as a punishment.

For the alleged constitutional violations outlined above, the plaintiff would "like the trial court judge rescued from [the Plaintiff's] case" and to be awarded money damages from jail authorities and from his attorney, Mr. Jordan (Doc. 2 at 6). The Plaintiff would also like a change of venue with respect to his state criminal prosecution, because such prejudice exists against him in Sullivan County as to deny him a fair and impartial trial (*Id.* at 5-6).

### III. Discussion

**1. Respondeat Superior**

There are no allegations of fact against Defendant Sheriff Wayne Anderson. It may be that the Plaintiff is suing this Defendant because he is ultimately responsible for housing inmates at the SCDC and for properly managing or supervising the operations at that facility. However, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995).

While respondeat superior does not provide a valid basis of liability, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976), the Plaintiff can still hold this Defendant liable so long as he can demonstrate that Defendant Sheriff implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of any of his subordinates. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1244 (6th Cir. 1989). But the Sheriff cannot be held liable for a mere failure to

4

act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

As the Plaintiff does not allege that this Defendant authorized any unconstitutional conduct on the part of any of his subordinates, there is nothing from which to conclude he condoned any such wrongful behavior. *See e.g., Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995) ("The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability."). Plaintiff's claims against this Defendant, which seemingly are based on a theory of respondiat superior fail to state a claim, as that theory does not support § 1983 claims.

**2.     Prosecutorial Immunity**

The Plaintiff has made no allegations of unconstitutional conduct against District Attorney General Barry P. Staubus. Had the Plaintiff had made such accusations in connection with the Plaintiff's ongoing state criminal prosecution, it would do him no good. It is well-settled that prosecutors, acting within the scope of their duties in initiating and pursuing a criminal prosecution and presenting the state's case, enjoy absolute immunity from a civil suit for damages. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). There is nothing to indicate that Defendant Staubus was doing anything except performing the duties of his office in prosecuting a criminal accused and, thus, he enjoys prosecutorial immunity from this lawsuit. *See Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003) (citing *Mowbray v. Cameron Co., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001)). The claims against Defendant Staubus likewise fail, based on his absolute immunity.

**3.     The State Criminal Proceedings**

The Plaintiff's allegations involving the conduct of the state court judge in his criminal case (i.e., the judge's refusal to allow the Plaintiff to file *pro se* motions and to grant him a speedy trial), as well as the Plaintiff's request for relief (i.e., that this Court order a change of venue and recusal of the trial judge) would require this Court to intercede in the Plaintiff's state criminal case. However, the Court cannot give the Plaintiff the relief he seeks, through the means of his filing a civil rights action under 42 U.S.C. § 1983.

This is so because the doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to abstain from entertaining lawsuits by individuals seeking to enjoin a criminal prosecution against them in state court where those proceedings implicate important state interests and the litigant has an adequate opportunity to raise his challenges in that forum. *See O'Shea v. Littleton*, 414 U.S. 488, 499-504 (1974). *See also Juidice v. Vail*, 430 U.S. 327, 335-36 (1977) (finding that abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interfere(s) with the legitimate activities of the Stat(e)") (quoting *Younger*, 401 U.S. at 44).

All of the factors supporting abstention are present here; therefore, the Court must abstain from interfering in the ongoing state criminal proceedings. Any and all such claims are **DISMISSED without prejudice**.

4.     **The Extradition Claims**

The plaintiff maintains that he was not afforded a habeas corpus hearing and that he did not waive extradition before Sullivan County officials took custody over him in Virginia and brought him to Tennessee. These claims were the subject of a prior habeas corpus petition, which was dismissed for failure to exhaust state remedies and is now on appeal. *Martin v.*

*Anderson*, Civil Action No. 2:14-cv-159 (E.D.Tenn. 2014) (Doc. 7, order of dismissal entered July 10, 2014) (Doc. 9, USCA Case No. 14-5883).

More important, precedent in the Sixth Circuit establishes that the "failure to comply with established [extradition] procedures does not deprive the fugitive of any protected right." *Barton v. Norrod*, 106 F.3d 1289, 1295 (6th Cir. 1997). Thus, the Plaintiff's allegations concerning the violation of his extradition rights fail to state a claim entitling him to relief under § 1983.

**5.    Excessive Force Claims**

According to the pleading, officers forcibly collected a biological specimen for DNA analysis from the Plaintiff on July 9, 2013, after he refused to consent to collection of the sample. Since the Plaintiff alleges that he was extradited from Virginia to Tennessee on July 13, 2013, the alleged use of excessive force occurring four days before he was transported to Tennessee would have occurred necessarily in the State of Virginia, where he was then incarcerated, at the hands of officers employed in that State.

Venue for § 1983 actions is governed by 28 U.S.C. § 1391(b), which requires that an action be brought in the judicial district where one of the defendants resides, if all defendants reside in the same State, or where the claim arose. In this instance, it is apparent that no putative wrongdoer resides in this judicial district and that the claim did not arise in this district. Without the identity of the officers who purportedly used excessive force and absent more specific details regarding the alleged incident, the Court cannot transfer the claim to the appropriate venue. Thus, the claim is **DISMISSED without prejudice** based on improper venue.

**6. Attack by Other Inmates**

The Plaintiff claims that an inmate assaulted him on July 25, 2013, leaving him with facial fractures and injuries, and that yet another inmate spat on him on March 3, 2014.

7

Prison officials have a duty under the Eighth Amendment to protect prisoners who are committed to their care from the violent acts of other prisoners.[3] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order for a prisoner to state a claim against prison authorities for failing to protect him from harm suffered at the hands of another prisoner, he must show "(1) that he is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had the state of mind ... of deliberate indifference to inmate health or safety." *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 834).

However, a prison official cannot be found deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety," which, requires both that he be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that he "also draw the inference*." Id.* at 837. Too, where a jailer who actually knows of a significant risk to a prisoner responds reasonably to the risk, he is not liable, "even if the harm ultimately was not averted." *Id*. at 844.

Here, there are no allegations of fact to suggest the existence of the required knowledge (and hence, the culpable mental state) on the part of a Defendant. Absent any contention that a Defendant knew about and disregarded a substantially serious risk posed by the Plaintiff's fellow inmates, the Plaintiff has failed to satisfy the "deliberate indifference" element of an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (finding that an inmate who claims that his living conditions amount to cruel and unusual punishment must establish that defendants possessed the requisite mental state). Because the Plaintiff has not pled factual

---

[3] A pretrial detainee, such as the Plaintiff, has a right to constitutional prison conditions through the Fourteenth Amendment Due Process Clause, which is analogous to the Eighth Amendment rights of prisoners. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). The Court will refer to the Eighth Amendment in the discussion of this and the following claims, since the same analysis applies under the Fourteenth Amendment.

content sufficient to permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal,* 556 U.S. at 678, he has failed to state a plausible claim for failure to protect him.

**7. Medical Claims**

The Plaintiff asserts that the doctor (by implication) refuses to treat him with the medication he was prescribed by his Virginia psychiatrist and that he did not see a specialist for injuries he sustained in the July, 2013 attack.

A prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison doctors and officials are deliberately indifferent to a prisoner's serious medical needs respectively, "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Also, "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *See Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Boretti v. Wiscomb,* 930 F.2d 1150, 1154-55 (6th Cir.1991)); *see also Estelle*, 429 U.S. at 103 ("[T]he denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.").

However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, a difference of opinion between medical care providers as to appropriate treatment for an inmate's ailment does not present a constitutional controversy. *Estelle*, 429 U.S. at 105-06; *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (finding that a disagreement between prison physician and physician who originally prescribed medications is not of constitutional magnitude).

9

Again, the Court sees no constitutional claim. The Plaintiff does not allege that the Defendants knew of any of the complained of lack of medical treatment. Thus, there is nothing to indicate the required culpable state of mind of deliberate indifference since the Plaintiff has not connected any Defendant to the denial of prescribed medication or the failure to take him to see the specialist. Furthermore, as noted, a disagreement over medication between the Plaintiff's Virginia psychiatrist and the doctor at the SCDC is not of constitutional concern under *Estelle*.

Because the Court cannot reasonably infer that the Defendants are "liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the Plaintiff has failed to state a plausible constitutional medical mistreatment claim against them.

**8. Hygiene & Harassment**

The Plaintiff complains that he has been denied a tooth brush, tooth paste, shaving supplies and soap and is harassed every day.

As noted, an Eighth Amendment claim is comprised of two elements: an objective element (i.e., a sufficiently serious deprivation) and a subjective element (i.e., a state of mind of deliberate indifference). A prison condition will be sufficiently serious if it denies a plaintiff "the minimal civilized measure of life's necessities," such as "essential food, medical care or sanitation," *Rhodes v. Chapman*, 452 U.S. 347-48 (1981), or hygiene. *Estelle*, 429 U.S. at 104 (finding a prisoner may not be denied his basic needs, including hygiene). Also, the length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto v. Finney*, 437 U.S. 683, 686-87 (1978) (remarking that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

Plaintiff has furnished no specific factual allegations to flesh out his hygiene claims, including the length of time he was denied these items of hygiene. Nor has he identified the Defendants as the individuals who denied him personal hygiene supplies. Therefore, the Plaintiff has not satisfied either the objective or subjective component of an Eighth Amendment claim.

The Plaintiff's contentions concerning harassment fare no better. Verbal abuse or harassment does not qualify as punishment forbidden by the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (noting that "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). "[H]harassment and verbal abuse ... do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004). Here again, the Plaintiff fails to state an actionable claim.

### 9. Disciplinary Write-Up

The Plaintiff contends that he received a disciplinary report for hanging up a towel to dry after showering, that (by inference) he was found guilty of the charged infraction, and that he lost one month's good time credit as a result. Other inmates are permitted to hang towels, so he maintains.

Where the duration of a prisoner's confinement is affected by a disciplinary conviction, he cannot bring a § 1983 action challenging that conviction until he has obtained a favorable termination of his disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (finding that an inmate's "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

11

proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration").

This is the case here. The Plaintiff alleges that his disciplinary proceedings resulted in the loss of good time credits; the loss of good time credits typically affects the length of one's imprisonment; and the disciplinary conviction still stands.[4]

Furthermore, state restraint of a prisoner violates due process only when the action exceeds the sentence in such an unanticipated manner as to implicate the Due Process Clause of its own force or when it imposes an atypical and significant hardship on the prisoner that is not a usual incident of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485.

The Due Process Clause of its own force does not require any particular process before an inmate may be punished for prison infractions, *Montanye v. Haymes*, 427 U.S. 236, 242 (1976), and it does not appear that the Plaintiff has suffered the requisite hardship as discussed in *Sandin*. Therefore, the Plaintiff's' punishment was not "atypical" because the loss of an inmate's good time credits is a common consequence for infractions of institutional rules. These allegations fail to state a due process claim, under *Sandin*'s holding.

Furthermore, if the Court treats the allegation that other inmates are allowed to hang towels whereas the Plaintiff was written up for the conduct in which other inmates are permitted to engage as an implied equal protection claim, the Plaintiff must show that he is similarly situated to other inmates and also show that a discriminatory purpose was a factor in his write up. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-66

---

[4] The Court takes the allegations as they have been drafted by the Plaintiff, though it recognizes that, given the Plaintiff's presumed status as a pretrial detainee, it is unlikely that he has incurred a criminal conviction or indeed has accrued any good time credits that could be taken.

12

(1997); *see also Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("For any equal protection claim, the threshold inquiry is whether the [claimant] is similarly situated to others who allegedly received preferential treatment.") (internal citation marks omitted).

Here, the Plaintiff has presented no circumstances to show that he is similarly situated to any other prisoner in the jail. *See Keevan v. Smith*, 100 F.3d 644, 649 (8th Cir. 1996) ("There can be no . . . meaningful comparison for equal protection purposes between two sets of inmates who are not similarly situated."). Nor has he demonstrated that a discriminatory purpose underlay the disciplinary report. Therefore, the Plaintiff has not stated an equal protection claim either.

**10. Legal Mail/ Telephone Calls**

The Plaintiff's next allegation is that mail from his attorney containing legal materials, including a § 1983 complaint form, was opened outside his presence. Thereafter, the materials were placed in his property and turned over to his attorney, following the Plaintiff's and his attorney's consent to release the materials to counsel.

Prisoners retain their First Amendment rights "not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Pell v. Procunier*, 417 U.S. 817, 832 (1974)). One of the rights retained by inmates is the First Amendment right to receive mail, subject to reasonable restrictions related to valid penological goals. *Sallier v. Brooks*, 343 F.3d 868, 873-874 (6th Cir. 2003). The opening of a prisoner's "'legal mail' should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir.1996).

13

The factual allegations offered in support of the legal mail claim suggest that the opening of the mail, the placing of the contents in the Plaintiff's stored property container, and the relinquishment of those contents to the Plaintiff's attorney were effectuated pursuant to a jail regulation involving the treatment of mail or contraband. Be that as it may, the Plaintiff has not alleged that the Defendants played any part in opening his legal mail and he, therefore, has failed to state a claim against them.

The Plaintiff further alleges that he has been denied phone calls from his attorney. However, the Plaintiff has not set forth essential facts surrounding those assertions, such when he was denied the phone calls or the identity of the person who denied him the phone calls or any other facts to suggest that the conduct complained of interfered with his right to counsel. Because these contentions are devoid of the necessary facts, they are conclusory and, therefore, fail to state a claim for relief. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Moreover, the Plaintiff has a right to communicate with his counsel, but he has "no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), *accord United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) (observing that "[p]risoners have no per se constitutional right to use a telephone"). Even if the Plaintiff had an absolute constitutional right to use a telephone, reasonable restrictions for legitimate penological interests could be imposed on any such a right. *Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that prison regulations which invade an inmate's constitutional rights are valid so long as they are "reasonably related to legitimate penological interests"); *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 125 (1977) (noting the fact of confinement and the needs of the

14

penal institution impose limitations on constitutional rights, including those derived from the First Amendment).

Additionally, "[i]n order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). No such interference has been alleged in the complaint.

The Plaintiff's last allegation likewise fails to state a claim which would entitle him to relief under § 1983.

## IV. Conclusion

Based on the above discussion, the Plaintiff's contentions, as they stand, with all the deficiencies noted above, fail to state § 1983 claims against the Defendants. Therefore, this case will be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

Since this case is being dismissed, the Plaintiff's pending motions (Docs. 4 and 6) are **DENIED** as **MOOT**.

**A SEPARATE JUDGMENT SHALL ENTER**.

**ENTER:**

                              s/ Thomas W. Phillips
                              SENIOR UNITED STATES DISTRICT JUDGE

15

Case 2:14-cv-00200-TWP-DHI   Document 7   Filed 01/26/15   Page 15 of 15   PageID #: 47